No. 2014-5125

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

PALLADIAN PARTNERS, INC.,

Plaintiff-Appellee,

v.

UNITED STATES

Defendant-Appellant.

_____

Appeal from the United States Court of Federal Claims
Case No. 14-cv-00317C, Judge Marian Blank Horn
_____

BRIEF FOR PLAINTIFF-APPELLEE

Daniel E. Chudd
Damien C. Specht
Charles L. Capito III
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6863

*Counsel for Palladian Partners, Inc.*

October 9, 2014

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, Daniel E. Chudd, counsel for Appellee Palladian Partners, Inc. certifies the following:

1.     The full name of the party represented by me is Palladian Partners, Inc.

2.     The name of the real party in interest represented by me is Palladian Partners, Inc.

3.     Palladian Partners, Inc. is owned by Altarum Asset Management, Inc, which is owned by Altarum Supporting Organization, Inc., which is owned by Altarum Institute.  No publicly-owned company owns stock in Palladian Partners, Inc.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or expected to appear in this court are:  Jenner & Block LLP; Daniel E. Chudd, Damien C. Specht, Charles L. Capito


October 9, 2014                              /s/Daniel E. Chudd
                                             Daniel E. Chudd
                                             *Counsel for Appellee*
                                             *Palladian Partners, Inc.*


i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...................................................i

TABLE OF AUTHORITIES...................................................iv

STATEMENT OF RELATED CASES .......................................1

JURISDICTIONAL STATEMENT ...........................................1

COUNTERSTATEMENT OF THE ISSUES...............................1

COUNTERSTATEMENT OF FACTS .......................................2

    A.  The Solicitation and Statement of Work .....................2

    B.  Palladian's OHA Appeal.............................................6

    C.  The Court of Federal Claims Decision.......................7

SUMMARY OF ARGUMENT ..................................................8

ARGUMENT ........................................................................13

I.   The Court Of Federal Claims Properly Exercised
Jurisdiction Over Palladian's Protest................................13

    A.  The Contracting Officer's Decision to Go Forward
with the Solicitation as Amended Is in Connection
with a Procurement. ..................................................14

    B.  The Tucker Act Also Permits Direct Review of
OHA's Determination. ..............................................15

II.  Palladian Properly Protested OHA's Final
Determination To The Court Of Federal Claims After
The Administrative Remedies Were Exhausted. ...............18

    A.  The Administrative Process Concluded When OHA
Issued Its Initial NAICS Code Determination. .........20

    B.  OHA Had the Opportunity to Consider Fully the
Appropriate NAICS Code for this Procurement, and
Has Issued a Final Decision on the Matter. ...............22

1.  OHA had the necessary factual background to consider the matter fully, and an opportunity to apply its expertise. .............................................. 23

2.  SBA has not been denied the opportunity to consider the issue about which Palladian sought judicial review. .................................. 27

    a.  OHA specifically considered whether NAICS Code 541611 best described the Solicitation's principal purposes. ................................. 28

    b.  Palladian's arguments in favor of NAICS code 519130, which demonstrated the unreasonableness of OHA's determination, would not have been raised by Palladian had it intervened at OHA, and, in any event, were ultimately not accepted by the COFC. ................................ 33

C.  Appellant's Foreshadowing of an "Inefficient and Disruptive Cycle of OHA Appeals" as a Result of the Court's Ruling Is Illusory. .......................... 35

D.  Appellant's Misapprehension of the Exhaustion Doctrine Is Unworkable. ............................. 36

E.  The Case Law Upon Which Appellant Relies Is Unavailing. ................................................. 39

III.  The Contracting Officer Has The Discretion To Modify The Solicitation To Meet The Agency's Actual Needs. ................... 44

IV.  The Court Did Not Expand The Record Or Apply De Novo Review ................................................. 50

CONCLUSION ....................................... 55

# TABLE OF AUTHORITIES

CASES

*A&E Coal Co. v. Adams*, 694 F.3d 798 (6th Cir. 2012) ........................... 51

*Advanced System Technology, Inc. v. United States*,
    69 Fed. Cl. 474 (2006) ..................................................... 21, 24, 28, 40

*Advanced System Technology Inc.*, SBA No. NAICS-4744
    (Nov. 18, 2005) ..................................................................... 24

*American Forest and Paper Ass'n v. U.S. EPA*, 137 F.3d 291
    (5th Cir. 1998) ....................................................................... 28

*Arcata Associates, Inc. v. United States*, 110 Fed. Cl. 290 .............. 15, 35

*Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308
    (Fed. Cir. 2007) ..................................................................... 41

*Bowen v. City of New York*, 476 U.S. 467 (1986) .................................. 22

*Bristol Bay Area Health Corp. v. United States*, 110 Fed. Cl. 251
    (Fed. Cl. 2013) ...................................................................... 51

*Cavalier Clothes, Inc. v. United States*, 810 F.2d 1108
    (Fed. Cir. 1987) ..................................................................... 16

*Ceres Environmental Services, Inc. v. United States*,
    52 Fed. Cl. 23 (2002) .......................................................... 24, 35

*Chemical Technology, Inc. v. United States*, No. 354-78, 1980 WL
    20810 (Ct. Cl. Jan. 16, 1980) ................................................ 47

*Croman Corp. v. United States*, 724 F.3d 1357 (Fed. Cir. 2013) ........... 49

*Deseado International, Ltd. v. United States*, 600 F.3d 1377
    (Fed. Cir. 2010) ............................................................... 41, 42

*Dial General Engineering*, SBA No. NAICS-5375 (July 10, 2012) ....... 26

*Harman Mining Co. v. Director, Office of Workers' Compensation
    Programs*, 678 F.3d 305 (4th Cir. 2012) ................................... 52

*Hoel-Steffen Construction Co. v. United States*, 684 F.2d 843
(Ct. Cl. 1982) .................................................................................. 44

*Information Ventures Inc.*, SBA No. 4294, 1998 WL 128528 (Mar.
18, 1998) .............................................................................. 24, 33

*InGenesis, Inc. v. United States*, 104 Fed. Cl. 43 (2012) .................. 14, 15

*McGee v. United States*, 402 U.S. 479 (1971) ................................... 22, 34

*McKart v. United States*, 395 U.S. 185 (1969) ...................... 21, 22, 25, 28

*Natural Resource Defense Council, Inc. v. U.S. EPA*,
824 F.2d 1146 (D.C. Cir. 1987) ................................................ 28, 32

*Related Industries, Inc. v. United States,* 2 Cl. Ct. 517 (1983) .............. 20

*RLB Contracting, Inc. v. United States*, Nos. 14-651C, Opinion,
(Oct. 3, 2014) .................................................................................. 15

*Sandvik Steel Co. v. United States*, 164 F.3d 596 (Fed. Cir.
1998) .................................................................................. 41, 42

*Sebastian v. United States*, 185 F.3d 1368 (Fed. Cir. 1999) .................. 51

STATUTES AND REGULATIONS

28 U.S.C. § 1491(b) ............................................................................. 9, 14

13 C.F.R. § 121.402(b) ...................................................................... 21, 23

13 C.F.R. § 121.1102 ............................................................................... 20

13 C.F.R. § 134.210 ................................................................................ 18

13 C.F.R. § 134.227(b)(3) ....................................................................... 25

13 C.F.R. § 134.305(a)(1) ....................................................................... 25

13 C.F.R. § 134.305(a)(2) ....................................................................... 25

13 C.F.R. § 134.305(a)(3) .................................................................. 25, 36

13 C.F.R. § 134.305(a)(4) ........................................................... 25

13 C.F.R. § 134.306(b) ......................................................... 25, 36

13 C.F.R. § 134.309(a) ............................................................. 36

13 C.F.R. § 134.314 .................................................................. 43

13 C.F.R. § 134.318(b) ............................................................. 38

19 C.F.R. § 351.225(f) .............................................................. 43

FAR §1.101 ............................................................................... 45

FAR §1.602.2 ............................................................................ 45

FAR §15.206(a) ........................................................................ 47

FAR §19.102(c) ........................................................................ 23

FAR §19.303(a)(1) .................................................................... 48

FAR §19.303(c)(8) .......................................................... 38, 45, 46

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel states that Palladian Partners, Inc. is unaware of any appeal in or from the same proceeding that was previously before this or any other appellate court. Palladian Partners, Inc. is unaware of any case pending in this or any other court that will directly affect or be directly affected by the Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

This Court possesses jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

## COUNTERSTATEMENT OF THE ISSUES

1.    Whether the Court of Federal Claims properly exercised jurisdiction over, and addressed the merits of, the Contracting Officer's decision to change the North American Industry Classification System ("NAICS") code for Solicitation No. N01DA-14-4423.

2.    Whether the court properly determined that the Contracting Officer's designation of NAICS code 541611 for the Solicitation, which was based on a determination by the Small Business Administration

1

Office of Hearings and Appeal that the court deemed unreasonable and deficient, was arbitrary, capricious, and contrary to law.

## COUNTERSTATEMENT OF FACTS

Consistent with Rule 28(b) of the United States Court of Appeals for the Federal Circuit Rules of Practice, Palladian Partners, Inc. ("Palladian") limits its statement of facts to specific areas of disagreement with, or areas requiring further explanation or clarification in, Appellant's statement of facts.

### A.    The Solicitation and Statement of Work

On February 28, 2014, the National Institute on Drug Abuse ("NIDA" or "Agency") issued Solicitation No. N01DA-14-4423 ("Solicitation") as a total set-aside for small business under North American Industry Classification System ("NAICS") code 541712, Research and Development in the Physical, Engineering, and Life Sciences (except Biotechnology), with a corresponding size standard of 500 employees.  A423.  The purpose of the Solicitation is to create a "Coordination Center" to generate original work and to publish online work prepared by the Centers of Excellence in Pain Education ("CoEPEs") – a collection of 12 health professional schools.   A378.  To

accomplish its mission, NIDA will require the contractor to develop a

website that disseminates CoEPE content, program interactive

scenarios for publication on the website, and create an online forum

that allows the CoEPEs to communicate with each other:

> The Coordination Center will be to maintain and
> facilitate conversations and collaborations of the
> CoEPEs on an interactive online communication
> portal and via other means.  This Center will also
> create online interactive case-based teaching
> scenarios that will be put on the NIH Pain
> Consortium site and used in teaching students in
> various professional schools (e.g. nursing, dental,
> medical and pharmacy schools) about how to
> diagnose and properly treat pain.  Further, the
> Coordinating Center will design, program,
> maintain, and update the page to be place[d] on
> the NIH website.  The Coordinating Center will
> review content from the CoEPEs for each case,
> proofread and correct content, and program
> content into interactive cases.

A376; *see also* A404 ("This acquisition requires the Contractor to host

an NIH webpage or database.").

The Solicitation set out seven tasks related to creating the

Coordination website.  In the initial NAICS appeal, OHA summarized

these tasks as follows:

> Task 1:    prepare and submit monthly progress reports;

3

Task 2:    "maintain, host and manage an interactive online communication portal" to be used by NIH, the contractor, and the CoEPEs;

Task 3:    "coordinate the process by which CoEPEs submit their materials" to NIH, and facilitate NIH's evaluation.  The contractor will "use the materials submitted by the CoEPEs" to create online interactive pain treatment scenarios with graphics and embedded videos.  The contractor will "proofread, edit, and program" the scenarios, and "suggest ways to improve the cases, when applicable."  In addition, the contractor will "program, format and code" portions of the NIH website;

Tasks 4 and 5: the contractor will "plan and host teleconferences," organize meetings and symposia, and prepare written summaries;

Task 6:    the contractor will post videos through a special YouTube channel; and

Task 7:    the contractor will, upon request from NIH, obtain additional content for case studies.

A665.  Notably, Tasks 4 and 5 are minor parts of the overall effort to develop web content, with Task 4 estimated at a mere $2,000 per year. A378-A380.  Because the purpose of the Solicitation is to create and publish online content, the Solicitation requires delivery of source code and object code, A382, delivery of an IT Security Plan and IT Risk Assessment, *id.*, and IT Security Certification and Accreditation, A383. Among the types of services required, the Solicitation explicitly did not

include "Administrative, Management and Support Information."

A401-A402.

In response to the initial appeal to the Small Business

Administration ("SBA") Office of Hearings and Appeals ("OHA) filed by

Information Ventures, Inc. ("Information Ventures"), the Contracting

Officer described the scope of work as follows:

> [T]he first two tasks are not the principal purpose of the contract, nor do they account for the greatest percentage of contract costs. As previously stated, the primary purpose and greatest percentage of contract costs will occur under Task 3, where the contractor will be creating both the case-based scenario modules from the raw materials provided by the CoEPEs, and the website that will host the case-based scenarios. While there may be some administrative tasks included within Task 3, such as hosting conference calls, these tasks are extremely minor in terms of overall costs and are done in the furtherance of the development of the case-based scenarios and the website to disseminate them.

A661. The Contracting Officer also stated that "it is NIDA's intention

that most organizational activities will take place through conference

calls and have minimal impact on the cost of the contract." *Id.*

### B.    Palladian's OHA Appeal

On April 14, 2014, Palladian timely appealed the Contracting Officer's new NAICS code 541611, Administrative Management and General Management Consulting Services, designation for the Solicitation, which rendered Palladian ineligible to compete.  Palladian did not argue that the original code was inappropriate.  *See* A677-A686. Instead, Palladian contended that NAICS code 541611 did not reflect the Solicitation's principal purpose, that OHA should have reviewed all potentially applicable NAICS codes to determine what code best fits, and, had it done so, it would have determined that NAICS code 519130, Internet Publishing and Broadcasting and Web Search Portals, was the most appropriate code.  *See id.*

OHA dismissed Palladian's appeal under the doctrine of *res judicata* because "a final judgment on the merits bars further claims by the parties or their privies based on the *same cause action*."  A768 (emphasis added).  With regard to Palladian's argument that OHA is charged with selecting among all NAICS codes the one that "best describes" the principal purpose of the Solicitation, and that OHA erred

6

by only considering the original code and the one proffered by

Information Ventures, OHA responded:

> [I]n situations such as *Information Ventures*,
> where OHA agrees that a code advocated by a
> party is most appropriate, there is no logical
> reason to proceed with a discussion of other, less
> appropriate codes.  Nor would it be practicable to
> specifically comment in the text of a decision on
> every NAICS code theoretically applicable to a
> procurement.

A770.

## C.    The Court of Federal Claims Decision

The Court of Federal Claims ("COFC"), in a decision by Judge

Horn, held the Contracting Officer's use of NAICS code 541611, which

was based on a determination by OHA, was arbitrary, capricious, and

contrary to law.  The court also observed (but did not hold) that NAICS

code 519130 was "potentially better suited to the solicitation's

statement of work."  Appellant Br. at 17-19.  In addition to these issues

and others described in Appellant's Statement of Facts, the court, as

part of its determination that NAICS code 541611 was unreasonable,

also analyzed the Solicitation's Statement of Work, the Contracting

Officer's statements to OHA, and the relevant NAICS codes.  *See* A34-

A53.  As a result of this analysis, the court concluded:

> The solicitation before this court does not ask for
> advisory "services" on how to operate a CoEPE
> program. The solicitation asks, instead, for the
> publication online of possibly well over a hundred
> interactive case-based scenarios, with videos,
> onto a website created by the contractor. These
> case-based scenarios will be proofread, edited,
> and programmed by the contractor, and the
> videos will be formatted and made "508
> compliant" by the contractor. Therefore, the court
> finds that, given the statement of work to be
> performed, the issuance of solicitation N01 DA-
> 14-4423 under NAICS code 541611 was an
> arbitrary and capricious action by the contracting
> officer. *See* 5 U.S.C. § 706(2)(A).

A52.  The court further found that OHA's decision "did not sufficiently

discuss why NAICS code 541611 'best demonstrates' the statement of

work of the NIDA solicitation."  *Id.*

## SUMMARY OF ARGUMENT

Palladian was rendered ineligible to compete for a contract to

continue work with NIDA when the Contracting Officer changed the

NAICS code under which the Solicitation would be competed to a more

restrictive code.  This was the result of a determination by OHA in

which it concluded that the Solicitation should be competed under a

NAICS code – 541611, Administrative Management and General
Management Consulting Services – that the Contracting Officer
concluded bears little relevance to the principal purpose of this
procurement, which is to design, program, maintain, and update
content for a website.

Palladian challenged OHA's determination and the Agency's new
NAICS code at the COFC pursuant to its bid protest jurisdiction under
the Tucker Act, 28 U.S.C. § 1491(b).  As the Contracting Officer – who
was precluded from challenging OHA's determination –  explained to
OHA, and as Palladian demonstrated to the court, NAICS code 541611
does not best describe the principal purpose of the Solicitation as
reflected in the Solicitation's Statement of Work.  After an exhaustive
analysis of the Contracting Officer's statements before OHA, the
Statement of Work, relevant NAICS codes, and OHA precedent, the
court agreed and concluded that "the issuance of solicitation
N01DA-14-4423 under NAICS code 541611 was an arbitrary and
capricious action by the contracting officer."  A52.

Palladian had also proffered another NAICS code – 519130,
Internet Publishing and Broadcasting and Web Search Portals – as a

better NAICS code, and requested that the court grant declaratory relief identifying that code as the most appropriate. The court declined Palladian's request and limited relief to an injunction prohibiting NIDA from receiving and reviewing proposals under NAICS 541611, but noted that "the parties' briefing on NAICS code 519130 was instructive, as it provided an example of a NAICS code potentially better suited to the solicitation's statement of work than NAICS code 541611." A56.

The Government appeals the court's decision, arguing that the court (1) erred by not dismissing Palladian's protest for a purported failure to exhaust the administrative remedies, (2) improperly concluded that the Contracting Officer abused his discretion by proceeding with the Solicitation as amended in light of OHA's NAICS code determination, and (3) improperly expanded the record.

Appellant's theory on exhaustion is unavailing for numerous reasons. *First*, the requirement that an appeal to OHA be made to allow OHA an opportunity to weigh-in on the most appropriate NAICS code has been met. Before Palladian's challenge, OHA reviewed the possible NAICS codes and, with or without intervention by other interested parties, had an independent duty to identify the most

appropriate NAICS code among all potentially applicable codes.

*Second*, OHA also had the requisite factual predicate to exercise its expertise under SBA's and OHA's rules and procedures.  It had before it the Contracting Officer's explanation of the Solicitation's purpose, the Solicitation itself, and the descriptions of the NAICS code included in the NAICS manual.  These are the facts required for a NAICS code determination.  *Third*, the issues that Palladian raised in its protest that were sustained by the court were the very same issues presented to OHA by the Contracting Officer – *i.e.*, whether NAICS code 541611 was the most appropriate code.  Finally, *fourth*, because of the aforementioned items, and because of the plain language of the OHA's regulation, there is no basis for the Government's contention that ancillary parties to the initial OHA appeal of a NAICS code, whose interests are materially different at that point, are required to intervene and "address the merits" of the OHA appeal in order to preserve their right to seek judicial review of a hypothetical new NAICS code that may render them ineligible.  Accordingly, Palladian's challenge to OHA's determination was ripe for judicial review.

The Government's contention that the Contracting Officer had no discretion other than to implement OHA's desired NAICS code, and thus the court erred in its decision, is likewise unhelpful.   Indeed, the Contracting Officer could have taken a number of actions other than implementing OHA's unreasonable determination.  The Contracting Officer could have amended (or even cancelled) the Solicitation to better describe the Agency's requirements rather than implementing a NAICS code that he knew was incorrect and might mislead offerors.  Indeed, to avoid misleading potential offerors about the nature of the work, the Contracting Officer may have been required to do so.  As a result, going forward with the incorrect code was a matter of his discretion.

Finally, the Government's argument that the court's consideration of public documents, such as OHA precedent and the published NAICS Manual, constitutes an improper expansion of the record is flawed. Public documents, such as those objected-to by the Agency, need not be included in the record, thus the court's consideration of them cannot be said to have expanded the record improperly.

## ARGUMENT

### I.    The Court Of Federal Claims Properly Exercised Jurisdiction Over Palladian's Protest.

The Contracting Officer's amendment of the Solicitation to change the NAICS code, as well as OHA's NAICS code determination that precipitated the amendment are both actions "in connection with a procurement" under section 1491(b) of the Tucker Act.  *See* A91-A92 (citing 28 U.S.C. § 1491(b)).  In its protest, Palladian cited precedent from the Court of Federal Claims where it had exercised Tucker Act jurisdiction over NAICS designations in amended solicitations that resulted from OHA decisions.  A91-A92.  In those cases, the court had asserted jurisdiction over both the OHA decision on the NAICS code and the contracting agency's subsequent identification of that amendment in the solicitation.  *Id.*  Here, the court stopped short of asserting jurisdiction over OHA's decision, and limited jurisdiction to the Contracting Officer's decision to change the NAICS code.  Although this aspect of the court's decision did not prevent Judge Horn from coming to the right conclusion, the court would have been well within its powers to address OHA's decision directly.

A.    **The Contracting Officer's Decision to Go Forward with the Solicitation as Amended Is in Connection with a Procurement.**

The Tucker Act provides the Court of Federal Claims with "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Below, the court exercised jurisdiction over "the contracting officer's actions to modify the solicitation and to adopt the new NAICS code advocated by the Small Business Administration Office of Hearings and Appeals." A24. This is consistent with the court's practice in prior challenges to NAICS codes assigned to solicitations following determinations at OHA. *See* A22-A23 (citing, *inter alia*, *Red River Serv. Corp. v. United States*, 60 Fed. Cl. 532, 533-34 (2004), *appeal dismissed*, 110 F. App'x 887 (Fed. Cir. 2004); *InGenesis, Inc. v. United States*, 104 Fed. Cl. 43, 46 (2012)). Notably, Appellant conceded jurisdiction at the hearing, and does not dispute jurisdiction in its brief. *See* A318 ("[The Government] concede[s] the

14

Court – under existing precedent, the Court has jurisdiction.");

Appellant Br. at 26-27.

## B.    The Tucker Act Also Permits Direct Review of OHA's Determination.

Because the court had jurisdiction over the contracting officer's decision to amend the Solicitation, it stopped short of deciding whether it had jurisdiction "to review the final decisions of the Small Business Administration, as long as those decisions are in connection with a proposed procurement." A23, n.8.   In a long line of cases, however, the COFC has exercised direct jurisdiction over SBA determinations in connection with a procurement.  In *InGenesis*, the court explicitly asserted jurisdiction over OHA's NAICS code determination, concluding that, like the contracting officer's decision to amend the solicitation, "SBA OHA's decision is similarly 'in connection with' a proposed procurement."  104 Fed. Cl. at 48; *see also RLB Contracting, Inc. v. United States*, Nos. 14-651C, Opinion, at *8 (Oct. 3, 2014)("Decisions of SBA's OHA are reviewable under [the Tucker Act's] grant of authority."); *Arcata Assocs., Inc. v. United States*, 110 Fed. Cl. 290, 295 (2013) (citing the court's "sweeping" bid protest jurisdiction in

concluding that "the CO's initial code designation and OHA's decision rejecting that designation . . . are both 'in connection with' a proposed ongoing procurement").

Although this Court has yet to weigh in on the precise scope of the COFC's jurisdiction over OHA's decisions, and specifically OHA's NAICS code determinations, the Court has held in analogous circumstances that "nothing either in the language or the legislative history of [the Small Business Act at 15 U.S.C. § 634] suggests that Congress intended to grant the SBA any greater immunity from injunctive relief than that possessed by other governmental agencies." *Cavalier Clothes, Inc. v. United States*, 810 F.2d 1108, 1111-12 (Fed. Cir. 1987). In *Cavalier*, the SBA withdrew a small business's certificate of competency ("COC"), thereby rendering it ineligible for award. *Id.* at 1110. Cavalier sought injunctive relief in the Claims Court, but the court dismissed the complaint because it concluded it did not have the statutory authority to enjoin SBA, which Congress entrusted with "final disposition" over COCs. This Court disagreed, noting that the finality of SBA's decision "does not immunize from judicial review" the decision that had adversely affected Cavalier. *Id.* at 1111.

16

Similarly, here, when the Contracting Officer blindly adopts OHA's NAICS code determination, rather than exercise any other contractual prerogatives, OHA's decision, and the Contracting Officer's adoption of it, fall within the COFC's jurisdiction. Thus, although the court was correct in asserting jurisdiction over the Contracting Officer's amendment of the Solicitation, and properly enjoined the Agency from accepting proposals under NAICS code 541611, the court also would have been well-within its jurisdiction to directly review OHA's determination, and issue relief accordingly. Had the court vacated OHA's decision, the Contracting Officer would have been free to amend the solicitation and assign a new NAICS code in accordance with the court's decision and the Agency's requirements. Subjecting OHA's decisions to direct judicial review and permitting the COFC to vacate, reverse, or remand OHA's decisions would provide all interested parties, including the Government, the clarity necessary to proceed with the disputed procurement. This rule would avoid putting a contracting officer in the position of utilizing a NAICS code that he or she knows is misleading or attempting to remedy that concern through amendment or cancellation of a given solicitation.

17

## II.    Palladian Properly Protested OHA's Final Determination To The Court Of Federal Claims After The Administrative Remedies Were Exhausted.

Appellant's position on exhaustion is untenable and was properly rejected by the COFC.  *See* A24-A25.  According to the Government, because Palladian received notice that another party had challenged the original NAICS code at OHA, it was "required to either address the merits in the pending OHA NAICS proceeding or accept OHA's ruling on the appropriate code as dispositive."  Appellant Br. at 21. Appellant's position stands for the novel proposition that all parties ancillary to an administrative proceeding (and even those that may, hypothetically, have any possible future interest in the proceeding) must "address the merits" of that proceeding to preserve their right to seek judicial review if the proceeding results in harm to that party.  Not only does Appellant's conception of exhaustion contemplate something more than intervention at OHA, as intervention is defined by SBA. *See* 13 C.F.R. § 134.210 (defining intervention as discretionary, the scope of which is subject to the sole discretion of the OHA judge).  This false dilemma, which would result in myriad prophylactic filings from ancillary parties, finds no support in statute, regulation, or case law,

18

and Appellant's articulation of its theory is self-contradictory and irrational.

Appellant's argument is premised on the assumption that Palladian would have and could have raised the same arguments to OHA as an intervenor in the initial appeal that it advanced at the court as an adversely affected party under a new NAICS code determination. In addition to being speculative, this is a demonstrably flawed assumption. During the OHA appeal of the original NAICS code, Palladian's interests were aligned with the Agency's as both wanted to maintain the original NAICS code, under which Palladian was eligible for award. Palladian would not have advocated for a new NAICS code as it did following OHA's decision because doing so would have undermined the status quo, thereby jeopardizing Palladian's own interests in the procurement. Under Appellant's perverse theory of exhaustion, Palladian was nevertheless required to question the Agency's chosen NAICS code to preserve its standing as an aggrieved interested party in a subsequent bid protest of a possibly new NAICS determination.

## A.  The Administrative Process Concluded When OHA Issued Its Initial NAICS Code Determination.

SBA's regulations preclude interested parties from seeking judicial review of a NAICS code determination before OHA has had an opportunity to determine the code that best describes the solicitation's principal purpose.  This exhaustion requirement provides that:

> A NAICS code designation made by a procuring activity contracting officer may be appealed to OHA.  The procedures governing OHA appeals are set forth in part 134 of this chapter.  ***The OHA appeal is an administrative remedy that must be exhausted before judicial review of a NAICS code designation may be sought in a court.***

13 C.F.R. § 121.1102 (emphasis added).

To preclude judicial review of administrative action, the statute or regulation must be clear and convincing.  It is well-established that "[t]he text or legislative history of a statute must provide 'clear and convincing' evidence of congressional intent . . . before a statute will be construed to restrict access to judicial review." *Related Industries, Inc. v. United States*, 2 Cl. Ct. 517, 520 (1983) (quoting *Johnson v. Robison*, 415 U.S. 361, 373–74 (1974)).

Appellant's contention that SBA's exhaustion requirement restricts the pursuit of judicial review of OHA's determination to the parties that "address the merits" in the initial appeal is contrary to the plain language of the regulation, and there is nothing in the legislative or regulatory history supporting such a restrictive interpretation. Indeed, the regulation is written in the passive voice. It neither defines nor limits the parties that may seek judicial review of an OHA appeal. Nor does it provide, or even imply, that the ability to seek judicial review vests only in those parties that participated in the OHA appeal. It most definitely does not restrict judicial review to an un-definable group of parties that "address[ed] the merits" of the earlier administrative proceeding. All that is required for judicial review to ripen is that an OHA appeal be filed and that OHA render a final decision identifying the most-appropriate NAICS code for a particular solicitation. This is consistent with OHA's ability, and its obligation, to consider *all* NAICS codes, including those not raised by the parties, to determine which "best describes" the solicitation at issue. *See* 13 C.F.R. § 121.402(b). Because OHA has an obligation to consider codes that are not raised in the proceeding, it addresses the merits of all remaining

21

codes by selecting the best single code. *See Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474, 479 (2006) ("OHA had already *sua sponte* considered all codes arguably appropriate for the solicitation")

### B. OHA Had the Opportunity to Consider Fully the Appropriate NAICS Code for this Procurement, and Has Issued a Final Decision on the Matter.

As the Supreme Court described in *McKart v. United States*, 395 U.S. 185 (1969), in cases such as this, in which "the administrative process is at an end" and the government is asking a court to dispose of a case because the plaintiff has failed to exhaust supposed remedies at the agency, the proper inquiry for the court is whether "judicial review may be hindered by the failure of the litigants to allow the agency to make a factual record, or to exercise or apply its expertise." *Id.* at 194. This is because "it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based" and then allow the agency "the first chance to exercise that discretion or to apply that expertise." *Id.* In a subsequent decision construing *McKart*, the Supreme Court further clarified: "the task for the courts, in deciding the applicability of the exhaustion doctrine to the circumstances of a particular case, is to ask 'whether allowing all

similarly situated [parties] to bypass [the administrative scheme in question] would seriously impair the [agency's] ability to perform its functions.'" *McGee v. United States*, 402 U.S. 479, 484 (1971) (middle bracket original) (emphasis added) (quoting *McKart*, 395 U.S. at 197 (1969)).  Finally, "application of the exhaustion doctrine is 'intensely practical,'" rather than mechanical and should "be guided by the policies underlying the exhaustion requirement." *Bowen v. City of N.Y.*, 476 U.S. 467, 484 (1986).

### 1.    OHA had the necessary factual background to consider the matter fully, and an opportunity to apply its expertise.

As a result of the original NAICS code appeal in this matter, and OHA's responsibility to consider all relevant NAICS codes in resolving that appeal, OHA had the necessary factual background to consider the matter fully, and an opportunity to apply its expertise.  Consequently, judicial review will not be hindered and OHA's ability to perform its administrative functions will not be "seriously impaired" by permitting similarly situated interested parties to challenge OHA's final agency action at the COFC.  Moreover, the policies underlying the exhaustion doctrine weigh in favor of addressing Palladian's case on the merits.

The Government's obligation – whether it is the Contracting Officer or OHA – in selecting a NAICS code is to select "the single NAICS code which best describes the principal purpose of the product or service being acquired."  13 C.F.R. § 121.402(b)); *see also* FAR § 19.102(c) ("[A] product or service shall be classified in only one industry, whose definition best describes the principal nature of the product or service being acquired even though for other purposes it could be classified in more than one.").  In furthering this regulatory requirement, OHA repeatedly acknowledges its "responsibility to ensure that . . . the most appropriate [industry] code is selected." *Info. Ventures Inc.*, SBA No. 4294, 1998 WL 128528 (Mar. 18, 1998).  It "does so because SBA has a responsibility to ensure that, where an appeal raises the issue of [industry] code classification, the most appropriate [industry] code is selected." *Id.* (emphasis added); *see also Advanced Sys. Tech. Inc.*, SBA No. NAICS-4744 (Nov. 18, 2005) (same); *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474, 479 (2006), ("OHA had already *sua sponte* considered all codes arguably appropriate for the solicitation").  OHA necessarily considers the code originally assigned by the agency, but also "any other . . . code it deems, *sua sponte*,

arguably is appropriate for the solicitation." *Ceres Envtl. Servs. v. United States*, 52 Fed. Cl. 32, 35 (2002).

Indeed, it is because of its responsibility to consider all appropriate NAICS codes and select the best one, and not just the better of the codes presented by the parties, that OHA generally dismisses later-filed appeals under the same solicitation. *See Info. Ventures Inc.*, SBA No. 4294, 1998 WL 128528 (Mar. 18, 1998). Thus, OHA is assumed to have fully considered all appropriate NAICS codes (or at the very least had an obligation to do so), and, from SBA's perspective, OHA's decision in a NAICS appeal constitutes final agency action. *See* 13 C.F.R. § 134.227(b)(3).

Appellant is incorrect when it says that "[t]he OHA appeal system functions as intended only if OHA has before it all competing views as to the proper NAICS code for a particular solicitation." Appellant Br. at 22. In fact, to file a NAICS appeal at OHA, an adversely affected party need only argue why the assigned code is in error; it need not argue in favor of, or even identify, an alternative code. *See* 13 C.F.R. § 134.305(a)(1)-(4). For its part, the responding agency need only send OHA a copy of the solicitation and any amendments to fulfill its role in

25

an appeal. 13 C.F.R. § 134.306(b). The parties, of course, may and often do submit additional material for the record. Once the appellant and the agency have complied with the minimal requirements set forth in OHA's regulation, however, OHA has the "necessary factual background" (*see McKart*, 395 U.S. at 194) upon which to exercise its expertise and render a final decision. In other words, the failure of any party to an OHA appeal – appellant, agency, or intervenor – to identify and advocate for or against specific NAICS codes as alternatives to the originally assigned code does not deprive OHA of an adequate factual record (essentially the solicitation and the NAICS Code Manual). Indeed, the regulations specifically contemplate appeals in which OHA will *sua sponte* consider and identify the most appropriate code without regard to the codes (or lack of codes) proffered by the parties. *See, e.g.*, *Dial Gen. Eng'g*, SBA No. NAICS-5375, at 3 (July 10, 2012) (selecting a NAICS code where "Appellant is not in a position to recommend a particular supplies or manufacturing NAICS code"). This, again, is because of the responsibility in an appeal to identify the NAICS code that "best describes" the nature of the procurement is OHA's, and

OHA's alone.  In this case, OHA had the factual background upon which
to exercise its discretion and expertise to identify the best NAICS code.

### 2.  SBA has not been denied the opportunity to consider the issue about which Palladian sought judicial review.

The Government also argues that Palladian's failure to intervene
and "offer its evidence and arguments to OHA" "deprived the parties
and the courts of the benefit of OHA's experience and expertise" and
resulted "in an administrative record not adequate for review of
Palladian's contentions."  Appellant Br. at 34.  In other words, the
Government claims that OHA was improperly deprived of an
opportunity to weigh in on the issues presented in Palladian's protest to
the court.  This position is also based on flawed assumptions and
misstatement of the exhaustion doctrine.

Palladian's protest presented two issues to the court:  first,
whether  "the selection of NAICS code 541611 for the solicitation was
arbitrary and capricious, and contrary to law," and second, whether the
agency "should have issued the solicitation under a third NAICS code,
519130, 'Internet Publishing and Broadcasting and Web Search
Portals,' which would allow the agency to accept offers from small

businesses, including Palladian, with 500 employees or fewer." *See* A2, A56. The first issue was squarely before OHA, including the same so-called "evidence and arguments," and thus OHA was not deprived of an opportunity to address it. Requiring exhaustion of the second issue demonstrates the irrationality of Appellant's position. Palladian, as an ancillary party in favor of the original code, would not have advocated for a third code as that would have been contrary to its interests at the time of the initial OHA appeal. In any event, the court denied Palladian's request for relief on the second issue. Thus, the Government was not prejudiced even if Palladian somehow erred by not raising it as an intervenor in the initial OHA appeal. Furthermore, OHA did have the opportunity, indeed the responsibility, to address the second issue as part of its duty to identify the most appropriate NAICS code. *See Advanced Sys.*, 69 Fed. Cl. at 479 ("OHA had already *sua sponte* considered all codes arguably appropriate for the solicitation").

    a.    <u>OHA specifically considered whether NAICS Code 541611 best described the Solicitation's principal purposes.</u>

Consistent with the rule that an agency be given the first opportunity to "make a factual record, or to exercise its discretion or

apply its expertise," *McKart*, 395 U.S. at 194, a purported failure to exhaust will not result in dismissal where it is clear the agency, in fact, had considered the issues raised by litigant. *See Natural Res. Def. Council, Inc. v. U.S. EPA*, 824 F.2d 1146, 1150-51 (D.C. Cir. 1987) (not applying the exhaustion requirement even though the plaintiff did not participate in administrative proceeding because "it is clear that the EPA actually did consider the issue raised by the NRDC in its petition for review"); *Am. Forest and Paper Ass'n v. U.S. EPA*, 137 F.3d 291, 295-96 (5th Cir. 1998) (not requiring exhaustion because comments from other interested parties were "sufficiently specific" that "agency cannot reasonably claim that it has been denied the opportunity to consider the issue"). Here, the issue of whether NAICS code 541611 best described the principal purpose of the Solicitation was indisputably considered by OHA, as were the underlying arguments advanced by Palladian and ultimately used by the court to find in favor of Palladian.

The issue upon which the court sustained Palladian's protest was the unreasonable selection of NAICS code 541611. Although the court found "the parties' briefing on [the third potential] NAICS code 519130 . . . instructive, as it provided an example of a NAICS code potentially

better suited to the solicitation's statement of work than NAICS code

541611," the court ultimately narrowed its review to determining

whether "the selection of NAICS code 541611 for the solicitation was

arbitrary and capricious, and contrary to law." A56.

In sustaining this aspect of Palladian's protest, the court held

that:

> In sum, a review of the statement of work, the
> record before the court, including the answers to
> questions asked by potential offerors reflected in
> Amendment 2 to the solicitation, and the
> statements by the contracting officer, indicate
> that Task 3 [of the Solicitation] will generate the
> majority of the contract's effort, value, and cost.
> NAICS code 541611 does not best describe the
> "principal nature" of the services being acquired.
> *See* FAR 19.102(b)(1).

A53. All of this record evidence was before OHA. Thus, to address

whether NAICS code 541611 was the most appropriate code, the court

analyzed the very same issues and record evidence before OHA.

Critical to the court's analysis, and central to Palladian's protest,

was the Contracting Officer's submission to OHA in response to

Information Venture's appeal, in which the Contracting Officer not only

defended the original code, but also "listed many reasons why he

thought NAICS code 541611, 'Administrative Management and General Management Consulting Services,' proposed by Information Ventures, did not match the solicitation's statement of work." A32.

The Contracting Officer's opposition to NAICS code 541611 at OHA and Palladian's opposition before the COFC are based on a task-by-task analysis of the Solicitation's Statement of Work. *Compare* A661-A662, *with* A102-A104. Specifically, the Contracting Officer emphasized to OHA that the principal purpose of the procurement falls under Task 3 of 7 "where the contractor will be creating both the case-based scenario modules from the raw materials provided by the CoEPEs, and the website that will host the case-based scenarios." A661. In making the very same argument to the court, Palladian relied almost exclusively on the Contracting Officer's own statements to OHA concerning the primacy of Task 3. *See* A103-A104 (A661). Palladian supports the Contracting Officer's statements with precedent from OHA and citations to the NAICS Manual for further support (A101-A104), neither of which constitutes "evidence and argument" not before OHA. The underlying argument – that the Solicitation's tasks, especially Task

3, do not comport with NAICS code 541611 – is the same one presented to OHA by the Contracting Officer.

OHA conceded as much in dismissing Palladian's OHA appeal of the Contracting Officer's decision to change the NAICS code following the *Information Ventures* appeal. A758-A770. OHA dismissed Palladian's appeal because "[t]he issue in [Information Venture's] case was ***identical to the one presented here***: *i.e.*, which NAICS code is appropriate for RFP No. N01DA-14-4423. This issue was the only matter under review in [Information Venture's appeal], and OHA decided the question on the merits." A768 (emphasis added).

Based on the Contracting Officer's submission to OHA challenging the applicability of NAICS code 541611 based on the level of effort associated with the Solicitation's various requirements, Appellant cannot reasonably claim that OHA was denied an opportunity to consider Palladian's identical argument in opposition to NAICS code 541611. *See NRDC*, 824 F.2d at 1151 ("This court has excused the exhaustion requirements for a particular issue when the agency has in fact considered the issue.").

b. <u>Palladian's arguments in favor of NAICS code 519130, which demonstrated the unreasonableness of OHA's determination, would not have been raised by Palladian had it intervened at OHA, and, in any event, were ultimately not accepted by the COFC.</u>

Given the regulatory framework under which OHA adjudicates its appeals – *i.e.*, its independent responsibility to identify the best code among all of the potentially applicable NAICS codes – it was entirely appropriate for Palladian's protest to identify a NAICS code (here, 519130) that better describes the Solicitation's principal purpose than the code selected by OHA (541611).   As explained above, OHA has an independent responsibility to select the NAICS code that "best describes" the principal nature of the procurement from among all arguably appropriate NAICS codes.  OHA is not excused (or deprived, in Appellant's words) of this responsibility simply because a party has not identified for OHA the most appropriate code or the universe of potentially appropriate codes.  Thus, once again, OHA's ability to make an informed decision on a developed record is in no way dependent on the parties' ability to raise all possible issues – in this case, all possible NAICS codes.

Even if Palladian had intervened in Information Venture's appeal, it would have been in a fundamentally different position than it found itself after being rendered ineligible by OHA's NAICS code determination. Palladian was eligible to bid for the contract under the original NAICS code, and thus would have no basis or interest in advocating for a new code with the same size standard, like 519130, even if that code better described the nature of the procurement. Thus, during the *Information Ventures* appeal, Palladian's interests would have been aligned with the Agency (to keep the code as one under which it was eligible), and it would have undermined those interests by arguing in favor of a change to the NAICS code because it would necessarily implicate the existing code under which Palladian was ready and willing to compete. Thus, not only is Appellant's argument defective as a matter of law, it is also overly speculative and based on the fundamentally flawed premise that Palladian's best interests as a potential intervenor in the earlier appeal would have been the same as they are now. In other words, it would be unreasonable to require Palladian to "exhaust" an argument that it would have had no interest in making in the earlier administrative proceeding. This paradox

reveals the absurdity of Appellant's position in the context of judicial review of a NAICS appeal. The court agreed. *See* A25-A26.

### C. Appellant's Foreshadowing of an "Inefficient and Disruptive Cycle of OHA Appeals" as a Result of the Court's Ruling Is Illusory.

The Supreme Court has warned in the context of the government's exhaustion arguments, that an agency's purported concerns about "'frequent and deliberate flouting' can easily be overblown, since in the normal case [an interested party] would be 'foolhardy' indeed to withhold a valid claim from administrative scrutiny." *McGee*, 402 U.S. at 485 (quoting *McKart*, 395 U.S. at 200-01). Confirming as much, Appellant, as it did below, continues to assert that permitting parties in Palladian's posture to seek judicial review will lead to an "inefficient and disruptive cycle of OHA appeals." Appellant Br. at 22-23. These concerns are illusory.

Palladian is not advocating a "bypass" of OHA. No one disputes that a party adversely affected by a NAICS code determination must first file at OHA within 10 days of that determination. In cases where contractors are adversely affected by a NAICS code determination resulting from an OHA appeal, however, the proper venue is the Court

of Federal Claims.  This is neither remarkable nor disputable.  *See, e.g.,*

*Ceres Envtl. Servs., Inc. v. United States*, 52 Fed. Cl. 23, 31-32 (2002);

*Arcata Assocs., Inc. v. United States*, 110 Fed. Cl. 290, 294-97 (2013).

### D. Appellant's Misapprehension of the Exhaustion Doctrine Is Unworkable.

According to the Government, all parties with a potential interest

in the outcome of a NAICS code appeal must either enter an appearance

and "address the merits" of the appeal, or "accept OHA's ruling on the

appropriate code as dispositive."  Appellant Br. at 21.  As explained

above, however, SBA's exhaustion requirement does not support this

false dilemma as the regulation includes only the requirement that an

OHA appeal precede judicial review.  It plainly does not limit judicial

review to the parties that appealed or intervened at OHA, much less the

parties that "addressed the merits" of the underlying appeal.

In addition to its position being contrary to the language of the

regulations, Appellant's position is also unworkable.  As explained

above, to initiate an OHA appeal, the regulations plainly do not require

the appellant to advocate in favor of an alternative code, 13 C.F.R.

§ 134.305(a)(3), the Agency to defend its original NAICS code

determination, 13 C.F.R. § 134.306(b), or an intervenor to respond to the appeal petition, 13 C.F.R. § 134.309(a).   Under Appellant's theory of exhaustion, however, all interested parties must not only appear at OHA, but must also "address the merits" to preserve their right to judicial review.  Even assuming Appellant had articulated a workable standard to determine if a party had sufficiently "addressed the merits" (it has not), the consequences of such a standard are untenable.  If an appellant challenges an existing NAICS code, but does not offer an alternative code, can it seek review of an OHA determination identifying a NAICS code that renders the appellant ineligible even though it did not "address the merits" of that code?  What about an interested party that is eligible under both the original NAICS code and the code identified by the appellant and thus has no stake in the appeal?  Could it seek judicial review if OHA selects a different NAICS code under which it is ineligible to compete for the contract?  What if that entity had intervened, but submitted nothing on the merits due to its impartiality?  And how would a party that had not yet made a decision to bid at the time of the NAICS appeal be treated?  These scenarios demonstrate that Appellant's hand-crafted exhaustion theory

is simply not viable as a means of precluding interested parties from seeking judicial review.  It also demonstrates why a plain reading of SBA's exhaustion requirement supports Palladian's position.

In the large majority of cases, most interested parties support the status quo and are interested in competing under the code originally assigned by the Agency.  After all, if the interested parties intend to bid, they are almost certainly eligible under the agency's preferred NAICS code.  Requiring each of those parties to not only intervene at OHA, but to "address the merits" of each appeal in such a manner as to preserve all possible theories of appeal, would be costly, burdensome, and add little to no value.  Indeed, requiring all intervenors to explain why the original NAICS code best describes the principal purpose of the Solicitation will likely lead in many cases to inconsistent and contradictory interpretations of the Solicitation, which would undermine the agency's and intervenors' own position.  In such scenarios, the agency itself is best-positioned to defend its solicitation and characterize its principal purpose.

Furthermore, because the Government is bound by OHA's NAICS

code determination and cannot appeal,[1] the only way to ensure judicial

review of OHA's decisions overturning agencies' NAICS code

designations is to permit other interested parties to protest those

determinations at the COFC, regardless of whether they intervened.

Otherwise, as the court observed, "under defendant's theory, that new

NAICS code could become completely unreviewable, a seemingly

unusual, and unfair result, which is inconsistent with a transparent

and fair procurement system."  A25.

### E.    The Case Law Upon Which Appellant Relies Is Unavailing.

Appellant relies extensively on the COFC's 2006 decision in

*Advanced Systems Technology, Inc. v. United States* for the proposition

that "interested persons were bound by OHA's determination of the

NAICS code for the solicitation," that SBA's "regulatory framework

would be fair and accord due process provided that interested persons

received notice of the OHS proceeding."  Appellant Br. at 37-38 (citing

---

[1]    *See* 13 C.F.R. § 134.318(b) ("If OHA grants the appeal (changes
the NAICS code), and the contracting officer receives OHA's decision by
the date offers are due, the contracting officer must amend the
solicitation to reflect the new NAICS code."); FAR §19.303(c)(8) ("[T]he
solicitation must be amended to reflect the [OHA] decision, if
appropriate.").

69 Fed. Cl. 474 (2006)).  Appellant further cites *Advanced Systems*

because it acknowledged that OHA has an interest in the "orderly

conduct of public business."  Appellant Br. at 37 (citing 69 Fed. Cl. at

485).

These points are as unremarkable as they are irrelevant.

Advanced Systems Technology ("AST") focused on three procedural

errors related to OHA's failure to notify AST of the NAICS appeal and

subsequent refusal to consider AST's views.  Unlike Palladian's protest,

AST did not protest the merits of OHA's NAICS code decision.  It asked

the court to vacate the OHA decision and remand to OHA its exclusion

from the proceedings at OHA under the Administrative Procedures Act

("APA").  Further, because the due date for proposals had come and

gone, AST also sought injunctive relief from the court to restore the

status quo ante so that it could present its arguments to OHA.  *See* 69

Fed. Cl. at 482-83.  The government did not question whether AST had

exhausted its remedies, but instead sought dismissal because the due

date for proposals had passed, which, according to the government,

rendered the protest nonjusticiable.  *Id.*  The court ultimately held that

the agency's failure to notify AST fell short of the government's

obligations under section 555 of the APA. *Id.* at 484 (citing 5 U.S.C. § 555(b)).

Here, Appellant seems to construe *Advanced Systems* and the Government's subsequent amendment of OHA's regulations to require public notice of OHA appeals as somehow supportive of its position that judicial review is foreclosed to interested parties that do not intervene and "address the merits" at OHA. The case stands for no such proposition. AST raised questions about procedural defects in OHA's notice requirements, and the court addressed those procedural defects.

Appellant also leans on two decisions from this Court arising out of the Court of International Trade. *See* Appellant Br. 40-41. In *Deseado International, Ltd. v. United States*, the Court affirmed the dismissal of an importer's attempt to challenge the Department of Commerce's earlier scope determination in its appeal of a subsequent administrative review. 600 F.3d 1377, 1378-79 (Fed. Cir. 2010). And, in *Sandvik Steel Co. v. United States*, the importer failed to initiate a scope inquiry at the agency and was precluded from raising the issue in its appeal to the Court of International Trade. 164 F.3d 596, 599-600 (Fed. Cir. 1998). Thus, in both cases, the company attempted to dispute

an earlier administrative finding as part of its challenge to a separate and later-filed administrative review proceeding. That would be akin to Palladian waiting to challenge the NAICS code determination for this Solicitation in a year or two when NIDA re-competes the work (*see Deseado*), or waiting until after award to challenge the NAICS code in the Solicitation (*see Sandvik*). In such instances, Palladian's collateral attack on an earlier settled issue would obviously be too late.[2] That is not the case here. Palladian timely protested the amendment of the Solicitation before the submission of proposals, and after the administrative remedy at OHA had been exhausted.

Furthermore, and as explained above, Palladian's interests in the *Information Ventures* OHA appeal – the administrative proceeding Appellant asserts that Palladian was required to participate – would have been materially different than they were following the Solicitation's amendment changing the NAICS code. *See supra* Part

---

[2]    Such challenges by Palladian would also been unavailable under the Court's decision in *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.")

II.B.2.b.  For the companies in *Deseado* and *Sandvik*, however, their interests in keeping their products outside the scope of the antidumping duty orders remained constant.  Once again, Appellant's case is based on the flawed premise that Palladian's best interests as a potential intervenor in the earlier appeal would have been the same as they are now.

Finally, the administrative determinations and procedures underlying scope determinations at the Department of Commerce versus NAICS code determinations by the Agency and OHA are not comparable.  A scope determination is a binary analysis in which neither party carries the burden of proof; the product is either with the scope of the order or not.  The Government does not take a position as a party and is, instead, charged with determining whether a certain product is or is not covered by antidumping duty order.  *See* 19 C.F.R. § 351.225(f).  For NAICS code designations, however, the contracting agency is required to identify the applicable code for a solicitation, and the agency's code is afforded considerable deference.  Parties will compete under that code unless an interested party timely appeals to OHA, and OHA determines that the agency's code is clearly erroneous.

43

*See* 13 C.F.R. § 134.314.  The parties' interests and expectations and the Government's role in NAICS code determinations are materially different from their roles in scope determinations related to antidumping duty orders.

### III. The Contracting Officer Has The Discretion To Modify The Solicitation To Meet The Agency's Actual Needs.

Appellant further attempts to insulate OHA NAICS code decisions from judicial oversight by arguing that "where an OHA NAICS code decision is issued, the regulations explicitly provide that the procuring agency 'must amend the solicitation to reflect the new NAICS code.'" Appellant Br. at 48-49.  This argument, which would make it functionally impossible to appeal *any* OHA decision overturning an assigned NAICS code, is based on a failure to recognize the authority of the Contracting Officer.

In rejecting the Appellant's argument, the Court of Federal Claims found that "[b]y issuing the amended solicitation . . . the contracting officer took responsibility for the change in the solicitation. By blindly accepting the NAICS code chosen by the Small Business Administration Office of Hearings and Appeals judge, and amending

the solicitation without any further consideration, the contracting officer did not properly exercise his discretion, as required in accordance with his responsibility as a contracting officer." A33.  The court is correct that the contracting officer has an obligation to protect the Government's interests and, consistent with that obligation, could have taken numerous actions other than amending the Solicitation to include a NAICS code that he knew did not match the Agency's actual requirements.  The Contracting Officer's failure to even consider any of these options constituted a failure to exercise discretion that was irrational.  *See Hoel-Steffen Const. Co. v. United States*, 684 F.2d 843, 850 (Ct. Cl. 1982) (finding that the contracting officer's failure to exercise his discretion was arbitrary and capricious).

The Federal Acquisition Regulation provides the "uniform policies and procedures for acquisition by all executive agencies."  FAR §1.101.  As the Court of Federal Claims noted, FAR §1.602-2 gives contracting officers the responsibility for "ensuring performance of all necessary actions for effective contracting, ensuring compliance with the terms of the contract, and safeguarding the interests of the United States in its contractual relationships." A21.  Consistent with this responsibility,

the FAR is explicit that the Contracting Officer is not a rubber-stamp for OHA when that action is inconsistent with the interests of the United States. With regard to NAICS code appeals, FAR §19.303(c)(8) states that "[i]f OHA's decision is received by the contracting officer before the date the offers are due, the decision shall be final and the solicitation must be amended to reflect the decision, *if appropriate*." (emphasis added). This provision emphasizes that the Contracting Officer has the discretion to address OHA's decision in the manner that is consistent with the obligation to protect the Government's interests. Although this could include amending a solicitation to include OHA's chosen NAICS code, it could also include numerous other actions, none of which were considered here.

Further, even if FAR §19.303(c)(8) did not give the Contracting Officer the authority to implement a NAICS code decision "if appropriate," a requirement to amend the Solicitation would not give the Contracting Officer the authority to affirmatively mislead offerors. In this case, the Contracting Officer clearly believed that OHA's selected NAICS code did not properly describe the services that NIDA wanted performed. The Contracting Officer characterized arguments in

46

favor of OHA's preferred NAICS Code 541611 as inconsistent with the contract's "primary purpose" and "seemingly without consideration to the predominant cost" of the contract's development tasks.  A661. Upon receiving a decision assigning NAICS Code 541611 to the Solicitation, the Contracting Officer could have implemented a decision that he knew was incorrect and irrational.   Such a decision, however, would have had the effect of misleading offerors that would have reached the incorrect understanding that services in the form of administrative and general management services, rather than internet publishing and development services, would be required.  Such an action would, in and of itself, have been a valid basis for protest. *Chemical Technology, Inc. v. United States*, No. 354-78, 1980 WL 20810, at *13 (Ct. Cl. Jan. 16, 1980) (finding fault where the Government "misled or in any event did not adequately inform bidders on this contract as to the scope of the contract they were bidding on").

To remedy this circumstance, the Contracting Officer had the discretion to recognize that OHA had apparently failed to understand the true work required by the Solicitation, that offerors could be similarly confused, and that the Agency may not receive proposals from

offerors with the requisite skill-set.  In that event, the Contracting

Officer has the discretion, and perhaps the obligation, to amend the

statement of work to more closely match the agency's true

requirements.   *See* FAR §15.206(a) ("When, either before or after

receipt of proposals, the Government changes its requirements or terms

and conditions, the contracting officer shall amend the solicitation").

This very issue was raised before the court below as a possible avenue

for the Contracting Officer to remedy a situation where the NAICS

Code and Solicitation do not match.   *See* A286-A288.  In this case, such

an amendment would be straightforward.  The Contracting Officer has

previously stated that "the primary purpose of the subject contract is to

find a contractor to produce a new product for the NIH Pain Consortium

that will be used to further the NIH Pain Consortium's mission of

developing new 'training and educational resources for medical, dental,

nursing, and pharmacy students to advance the assessment, diagnosis,

and safe treatment of pain.'"  A660.  Adding that language to the

Solicitation would clarify NIDA's position that its requirement was not

for administrative and general management consulting services, but

rather for a new internet publishing tool and related content.  With this

substantive clarification of the Solicitation, the Contracting Officer would be required to make a new determination as to the appropriate NAICS code, and could select a code that would not affirmatively mislead offerors.  FAR §19.303(a)(1).

Alternatively, the Contracting Officer had the discretion to cancel the Solicitation, rather than amend the Solicitation in a misleading way.  That action would have allowed NIDA to address its procurement strategy and confirm that it was properly explaining its true requirements.  This very possibility was called out in the Solicitation: "the SOLICITATION may be amended or canceled as necessary to meet NIDA's requirements." A428, A513.  In fact, the Government itself conceded that the Contracting Officer had the discretion to cancel the Solicitation after receipt of OHA's decision:  "the delays to the procurement process, for example, as those occasioned by the filing of repeated OHA appeals of the code designation in the Solicitation, [] may force the agency to cancel the Solicitation."  A181. This action would be consistent with the Federal Circuit precedent granting the Contracting Officer wide discretion to cancel all or part of a solicitation.  *Croman Corp. v. United States*, 724 F.3d 1357 (Fed. Cir. 2013) ("Given the level

49

of discretion the Forest Service has to make decisions responsive to its actual needs, this court finds nothing arbitrary or capricious in the decision to cancel and re-solicit certain portions of the 2011 Solicitation.").  Such an action would be particularly appropriate here where bids have not been submitted.

In sum, Appellant is incorrect that "the court created out of whole cloth the opportunity, and authority, for the  contracting officer to review, and evaluate whether OHA's determination was correct for the solicitation's statement of work."  Appellant Br. at 48. To the contrary, the court simply recognized that a contracting officer faced with an arbitrary and capricious decision of OHA that will affirmatively mislead offerors can take numerous discretionary actions to remedy that circumstance.  Such a result is consistent with the law, regulations and a fair procurement system.

## IV.    The Court Did Not Expand The Record Or Apply De Novo Review

Appellant argues that the Court improperly expanded the administrative record by reviewing "new evidence and new arguments" that were not before OHA.  Appellant Br. at 51.  Specifically, Appellant believes that the Court was precluded from reviewing (1) the arguments

raised by Palladian in its briefs, (2) the contents of the NAICS Code
Manual related to NAICS Code 519130, Internet Publishing and
Broadcasting and Web Search Portals, (3) solicitations on a public
website and (4) OHA case law that was not cited by OHA in its initial
decision.   *Id.* at 50-59.  As a result of its review of these arguments and
public materials, the Appellant contends that the Court engaged in de
novo review of OHA's decision.  This argument is unsupported by any
available precedent.

First, argument is not part of the administrative record.  *See*
RCFC App. C ¶ 22 (listing the documents that make up the
administrative record in a protest).  Certainly, Palladian has never
claimed that the Government must adopt its argument below that
NAICS Code 541611 is not appropriate for this procurement, and the
reverse makes no sense.  Because argument is not part of the
administrative record, the Court did not expand the administrative
record by considering Palladian's arguments.

Second, the NAICS Manual, solicitations and OHA case law cited
by Palladian are public documents.  It is well established that a Court
may take judicial notice of public documents or matters of public record,

even if not included in the administrative record. *See Sebastian v. United States*, 185 F.3d 1368, 1373-74 (Fed. Cir. 1999)(Court may consider matters of public record in deciding whether to dismiss a complaint under Rule 12(b)(6)); *Bristol Bay Area Health Corp. v. United States*, 110 Fed. Cl. 251, 262 (2013) (In a contract dispute, the Court may take judicial notice of public documents even if not incorporated into the complaint by reference). Other Circuits have expressly applied this rule to review of administrative records in the APA context. *See A&E Coal Co. v. Adams*, 694 F.3d 798, 802 (6th Cir. 2012) (no need to include copy of regulatory preamble in administrative record because the APA does not require public documents to be made part of the record); *Harman Mining Co. v. Dir., Office of Workers' Comp. Programs*, 678 F.3d 305, 316 (4th Cir. 2012)("the APA does not provide that public law documents, like the Act, the regulations, and the preamble, need be made part of the administrative record."). The consideration of these documents is even more obvious here where OHA itself cited to the very same NAICS Code Manual utilized by the Court (albeit a different page), A667, and used past solicitations and case law to support its decision. A670. These documents were public and easily accessible for

OHA, and, in any event, the Court was entitled to consider them as part of its review without expanding the record.

One of Appellant's most pointed arguments about the purported expansion of the record relates to the Court's conclusion that administrative activities constitute a small part of the work required under the Solicitation's most important task, Task 3. Appellant Br. at 56-58. Appellant spills significant ink arguing that "This was error. The record did not contain any evidence of the probable costs of specific activities to support the court's conclusions, and substitution of judgment." *Id*. Of course, it is the Contracting Officer who introduced these very facts before OHA, explaining that "[t]he primary purpose of the solicited contract and the ***majority of the anticipated cost*** of the contract will be in the implementation of Task 3 . . . While there may be some administrative tasks included within Task 3, such as hosting conference calls, these tasks are ***extremely minor in terms of overall costs*** . . ." A660-661 (emphasis added). Although OHA ignored these facts, the probable costs of specific activities were squarely in the record before it. As a result, this argument is baseless.

Further, there is no evidence whatsoever that the Court's consideration of these public documents resulted in a de novo review, and Appellant cites none. Instead, Appellant rehashes arguments made below and claims that the Court conducted a de novo review each time the Court disagreed with Appellant's position. Appellant Br. at 56-59. Of course, the Court's standard of review is not determined by the outcome. Instead, it is determined by the opinion itself, in which the Court consistently cites the appropriate "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of review for bid protest cases, A30-32, and determined after detailed consideration of all the facts that:

> The solicitation before this court does not ask for advisory "services" on how to operate a CoEPE program. The solicitation asks, instead, for the publication online of possibly well over a hundred interactive case-based scenarios, with videos, onto a website created by the contractor. These case-based scenarios will be proofread, edited, and programmed by the contractor, and the videos will be formatted and made "508 compliant" by the contractor. Therefore, the court finds that, given the statement of work to be performed, the issuance of solicitation N01DA-14-4423 under NAICS code 541611 was an arbitrary and capricious action by the contracting officer.

A52.

## CONCLUSION

As an interested party adversely affected by an irrational NAICS code determination, Palladian appropriately protested to the Court of Federal Claims after the administrative remedies at OHA had been exhausted.  The court correctly concluded that the Contracting Officer's designation of NAICS code 541611 for the Solicitation, which was based on a flawed and deficient decision by OHA, was arbitrary, capricious, and not in accordance with law.  If anything, the court could have gone further under section 1491(b) of the Tucker Act and invalidated or vacated OHA's NAICS code determination.  For all of these reasons, the Court of Appeals should deny the Government's Appeal, and affirm the Court of Federal Claims' decision.

Respectfully submitted,

Of Counsel:

Damien C. Specht
Charles L. Capito
Jenner & Block LLP
1099 New York Ave., NW
Suite 900
Washington, D.C. 20001
(202) 639-6863 (tel)
(202) 661-4857 (fax)
dspecht@jenner.com
ccapito@jenner.com

/s/Daniel E. Chudd
Daniel E. Chudd
Jenner & Block LLP
1099 New York Ave., NW
Suite 900
Washington, D.C. 20001
(202) 639-6863 (tel)
(202) 661-4857 (fax)
dchudd@jenner.com

Counsel for Palladian Partners,
Inc.

October 9, 2014

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of October 2014, I caused the foregoing Brief for Appellee, Palladian Partners, Inc., to be filed electronically with the Clerk of the Court using CM/ECF, which will send notification to all registered users.

Date:  October 9, 2014          <u>/s/Daniel E. Chudd</u>
                                Daniel E. Chudd

## CERTIFICATE OF COMPLIANCE
## UNDER FEDERAL RULES OF APPELLATE PROCEDURE
## 32(a)(7) AND FEDERAL CIRCUIT RULE 32

Counsel for Appellee, Palladian Partners, Inc., certifies that the brief contained herein has a proportionally spaced 14-point typeface, and contains 10,699 words, based on the "Word Count" feature of MS Word 2007, including footnotes.  Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, and Table of Authorities.

Date:  October 9, 2014             /s/Daniel E. Chudd
                                   Daniel E. Chudd
                                   *Counsel for Appellee*
                                   *Palladian Partners, Inc.*